## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF GEORGIA
## COLUMBUS DIVISION

| | | |
|---|---|---|
| DEONNA FOSTER | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION FILE |
| v. | ) | NO._____ |
| | ) | |
| ST. FRANCIS HOSPITAL | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| Defendant. | ) | |

## COMPLAINT

COMES NOW Plaintiff Deonna Foster ("Ms. Foster" or Plaintiff), by and through her undersigned counsel, and sets forth this Complaint against Defendant St. Francis Hospital ("St. Francis" or Defendant) alleging disability discrimination and retaliation in violation of the Americans with Disabilities Act, as amended ("ADA") and violations of the Family Medical Leave Act ("FMLA").

## INTRODUCTION

Plaintiff began working at St. Francis as an hourly ICU multi-care tech in February 2019. On or about September 26, 2019, Plaintiff suffered an injury while servicing a patient. In the process of bathing the patient and cleaning the room, Ms. Foster came into contact with something that caused an allergic reaction on her hands and arms. She reported the problem and was sent to the emergency room in the hospital to seek treatment, where she was diagnosed with contact dermatitis.  She was

granted workers' compensation and was on leave starting September 27, 2019 through October 8, 2019. When Plaintiff returned to work, she asked for accommodations due to her contact dermatitis. Her employer got upset about the accommodations and they began to retaliate against her. Due to the disability discrimination and retaliation, Plaintiff filed an EEOC charge on December 16, 2019. Shortly after receiving the EEOC charge, on or about January 8, 2020, Plaintiff was assigned in retaliation to sit with a combative patient, who kicked Plaintiff in the shoulder and punched her in the face. Plaintiff was seen in the ER. Then or about January 16, 2020, Plaintiff had started her scheduled 12-hour shift. After two hours, Plaintiff was told to go home and given no explanation. After that date, Plaintiff was taken off the schedule and terminated in retaliation for filing an EEOC charge. Defendant's actions violate the ADA and the FMLA.

## JURISDICTION AND VENUE

1.      Plaintiff's ADA and FMLA claims present federal questions over which the court has jurisdiction under 28 U.S.C. § 1331 and 42 U.S.C. § 2000e-5(f)(3).

2.      This court is an appropriate venue for all of Plaintiff's claims under 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e-5(f)(3) because all the parties reside within the Northern District of Georgia and a substantial majority of events giving rise to Plaintiff's claims occurred in this judicial district.

3.      This Court has personal jurisdiction over Defendant as it operates a hospital in

Columbus, GA within the geographic boundaries of this Court.

## ADMINISTRATIVE PROCEEDINGS

4.      On December 16, 2019, Plaintiff filed a Charge of Discrimination with the Equal

Employment Opportunity Commission ("EEOC"). Attached hereto and incorporated

herein is **Exhibit A**.

5.      The EEOC has issued a Right to Sue Letter for the EEOC Charge. Attached

hereto and incorporated herein is **Exhibit B**.

6.      Plaintiff has exhausted all her administrative remedies prerequisite to filing this

suit.

7.      This suit has been commenced within 90 days of Plaintiff's receipt of her right

to sue letter.

## PARTIES

8.      Plaintiff is a citizen of the United States and a resident of the state of Georgia.

9.      Plaintiff has a disability as defined by the ADA.

10.     Plaintiff had a serious health condition as defined by the FMLA.

11.     Plaintiff was at all times material to the compliant an employee of St. Francis.

12.     St. Francis is licensed to do business in Georgia.

13.     St. Francis transacts business in the Middle District of Georgia.

14.     St. Francis is subject to this Court's jurisdiction and may be served with

process.

## **FACTUAL ALLEGATIONS**

15.   Defendant is a 376-bed hospital that provides a full range of inpatient, outpatient, and emergency room services.

16.   Defendant had more than 50 employees within a 75-mile radius of the location in which Plaintiff was employed in each of 20 or more calendar weeks in the current or preceding year within the meaning of 29 U.S.C. § 2601 *et seq.*

17.   Plaintiff began employment with Defendant on or about February 2019 in the position of Multi-Care Tech in the ICU.

18.   On or about September 26, 2019, Plaintiff came into contact with feces and other bodily fluids while caring for a patient.

19.   Plaintiff began to break out in hives and her forearms and hands began to swell up.

20.   Plaintiff reported her injuries to the supervisor on duty, Christy Larson, who laughed and asked another nurse if Plaintiff was lying.

21.   Supervisor Larson came to the patient's room to see if Plaintiff was telling the truth or trying to get out of work.

22.   Supervisor Larson told Plaintiff she could not go to the ER to seek treatment because she would be "abandoning her patient."

23.   Plaintiff was finally allowed to go the ER and was diagnosed with contact dermatitis.

24.   After being discharged, Plaintiff and her mother went to see Supervisor Larson,

who was hesitant to give Plaintiff paperwork to document the incident.

25.     Part of the required medical care included a referral for neurological testing which was not completed because Plaintiff was told her workers' compensation claim would not cover it.

26.     Plaintiff was told by MedCare, the workers' compensation clinic, that she had been withdrawn as a patient because St. Francis refused to pay for her treatment.

27.     Plaintiff was forced to return to work on or about October 8, 2019 or told she would be fired by Supervisor Lawson.

28.     Plaintiff agreed to return but told Defendant that she would need an accommodation due to the contact dermatitis disability she was suffering from.

29.     Plaintiff had trouble picking up things and holding things due to continued issues with her hands.

30.     Plaintiff was criticized and talked about negatively in front of patients.

31.     Defendant began to retaliate against Plaintiff for requesting an accommodation.  Specifically, Defendant cut her hours, assigned her less desirable shifts, held her to standards other co-workers were not held, and assigned her to the most difficult tasks, etc.

32.     Plaintiff filed an EEOC charge on December 16, 2019, due to Defendant's failure to pay for the required medical testing and retaliation resulting in emotional distress.

33.    On or about January 8, 2020, Plaintiff was assigned to sit with a combative patient.

34.    The patient subsequently kicked Plaintiff in the shoulder and punched her in the face.

35.    Plaintiff reported the injury to her supervisor and requested permission to go to the ER for treatment.

36.    Plaintiff's supervisor implied Plaintiff was not actually injured and that she was pretending to be hurt.

37.    After being seen in the ER, Plaintiff was diagnosed with a muscle strain.

38.    After discharge from the ER, Plaintiff was told to see Supervisor Larson.

39.    Plaintiff was referred to a workers' compensation doctor and was referred to a physical therapist.

40.    Plaintiff faithfully attended all physical therapy sessions.

41.    On her last follow-up appointment with the workers' compensation doctor, Plaintiff asked for her records so that she could return to full duty.

42.    The workers' compensation doctor stated that she must need the records to sue St. Francis even though Plaintiff never mentioned her EEOC charge.

43.    Plaintiff was also insulted by the workers' compensation doctor, who said that Black people are always looking to sue companies for money and will not be successful.

44.    Plaintiff was cleared to return to full duty but was harassed and bullied

by her fellow nurses.

45.    Plaintiff reported the harassment to the House Supervisor and to HR but there was no investigation.

46.    On or about January 16, 2020, Plaintiff was called into a meeting with Erica Powell from HR and the CVICU charge nurse, who questioned Plaintiff about her EEOC charge.

47.    Plaintiff was told not to come back to work and was taken off the schedule.

48.    Plaintiff was given no reason that she was taken off the schedule and told to leave.

49.    Plaintiff did not request FMLA leave or any other leave at any point, nor does Plaintiff remember signing any leave paperwork.

50.    Despite making herself available to return to work, Plaintiff has not been allowed to return to work.

51.    Plaintiff has not been paid for the time she has been away from her job.

## COUNT I

## VIOLATION OF THE ADA

52.    Plaintiff hereby incorporates each and every preceding paragraph of this Complaint.

53.    Plaintiff needed accommodations after suffering nerve damage to her

hands due to the incident on September 26, 2019.

54.    Defendant failed to pay for necessary medical tests to determine the extend of her injury and disability.

55.    Plaintiff requested that her job be modified to accommodate her disability.

56.    Defendant refused to engage in a deliberative process to work out a reasonable accommodation.

57.    Plaintiff's duties were not modified, resulting in Plaintiff having trouble gripping things and dropping them.

58.    Plaintiff was harassed and forced to work in a hostile work environment due to her disability.

59.    Defendant's actions violated the ADA.

60.    As a result of St. Francis's unlawful actions, Plaintiff has suffered damages, including but not limited to loss of pay, job benefits, emotional distress, inconvenience, humiliation, and all other damages allowed by law.

## COUNT II

## RETALIATION IN VIOLATION OF THE ADA

61.    Plaintiff hereby incorporates each and every preceding paragraph of this Complaint.

62.    Plaintiff engaged in protected activity under the ADA when she requested and accommodation and when she filed an EEOC charge.

63.    Plaintiff was terminated in retaliation for engaging in protected activity.

64. St. Francis's actions constitute unlawful retaliation in violation of the ADA.

65. St. Francis willfully and wantonly disregarded Plaintiff's rights and St. Francis's retaliation against Plaintiff was undertaken intentionally and in bad faith.

66. As a result of St. Francis unlawful actions, Plaintiff has suffered lost compensation and other benefits of employment, significantly diminished employment opportunities, emotional distress consisting of, but not limited to, outrage, shock, and humiliation, inconvenience, loss of income, and other indignities.

COUNT III

FMLA INTERFERENCE

64. After some time in February 2020, Plaintiff was employed for Defendant for over a year.

65. When Plaintiff stopped being scheduled, she had worked more than 1250 hours in the past 12 months.

66. Defendant is a covered entity by the FMLA

67. Specifically, Defendant had 50 of more employees within 75 miles of Plaintiff's work location.

68. Plaintiff's skin condition constitutes a serious health condition as defined by the FMLA.

69. Plaintiff timely notified Defendant of her serious health condition.

70.   Plaintiff became healthy enough to return to work.

71.   Plaintiff notified Defendant that she was ready to come back to work.

72.   Despite, Plaintiff's notice she was not allowed to return to her position.

73.   Plaintiff was not allowed to return despite the fact that Defendant had a need for people in Plaintiff's position.

74.   Instead, Plaintiff was replaced.

75.   Defendants' decision to violate the FMLA was intentional.

76.   Plaintiff was replaced and not allowed to return to her position to interfere and/or retaliate against her use of FMLA leave, to punish her because of his disability and to retaliate against her for her complaints of disability discrimination.

77.   Plaintiff to this day is listed as an employee with Defendant, but she has never been placed back on the schedule despite her repeated request to be reinstated.

**WHEREFORE**, Plaintiff prays that this Court:

(a)   a declaratory judgment that Defendant has engaged in unlawful employment practices in violation of the ADA and the FMLA;

(b)   an injunction prohibiting Defendant from engaging in unlawful employment practices in violation of the ADA and the FMLA;

(c)   full back pay from the date of Plaintiff's retaliatory termination, considering all raises to which Plaintiff would have been entitled but for her unlawful termination, and all fringe and pension benefits of employment, with prejudgment interest thereon;

(d)     front pay to compensate Plaintiff for lost future wages, benefits, and pension;

(e)     compensatory damages, in an amount to be determined by the enlightened conscience of the jury, for Plaintiff's emotional distress, suffering, inconvenience, mental anguish, loss of enjoyment of life and special damages;

(f)     punitive damages in an amount to be determined by the enlightened conscious of the jury to be sufficient to punish Defendant for its conduct toward Plaintiff and deter Defendant from similar conduct in the future;

(g)     reasonable attorney's fees and costs; and

(h)     other and further relief as the Court deems just and proper.

Respectfully submitted this 14th day of July, 2021.

/s/ J. Stephen Mixon
J. Stephen Mixon
Georgia Bar No. 514050
steve@mixon-law.com
Attorney for Plaintiff

THE MIXON LAW FIRM
1691 Phoenix Boulevard
Suite 150
Atlanta, Georgia 30349
Telephone: (770) 955-0100